HAMILTON COAL MINING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14638. Promulgated November 8, 1929.

*Leroy Sanders, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

OPINION.

TRAMMELL: With respect to the issue relating to depreciation, the only question is the proper rate allowable. The petitioner contends that it is entitled to take depreciation on its machinery and buildings at the rate of 12½ per cent, or over a life of 8 years, whereas the respondent contends that the rate of 10 per cent as allowed by him is proper. The petitioner urges that at the beginning of operations in 1917, it estimated that 8 years would be required to exhaust the coal in the lands which it then owned; that it proceeded to take depreciation on its machinery and equipment at the rate of 12½

per cent for all years; that depreciation was allowed at this rate for 1918 and 1919 and should be allowed for 1920 and 1921.

With respect to that part of the petitioner's contention as to the rate of depreciation allowed by the respondent in 1918 and 1919, there is nothing in the record to show what amount was allowed for those years and if a rate of 12½ per cent had been allowed, that fact would not of itself be controlling as to the rate allowable in the years before us.

While the evidence shows that about the time operations were begun, it was estimated that the amount of the recoverable coal in the lands then owned by the petitioner was 1,400,000 tons, there is nothing in the record to indicate that it was estimated that it would take 8 years to exhaust the coal except that the petitioner is claiming the depreciation rate of 12½ per cent. Whatever time, if any, it was estimated that it would take to exhaust the coal, the record shows that the recoverable coal in this land was practically exhausted in 1925 and that there were only six or eight scattering acres remaining to be worked in the early part of 1926. While additional coal lands were acquired during 1920 and 1921, the taxable years here involved, the recoverable coal in them was exhausted about April 1, 1926. While the recoverable coal in these lands was exhausted at about the time the coal in the land originally acquired was exhausted, it does not appear from the record whether it was known or estimated in 1920 or 1921 that the coal in them would be so exhausted. Other coal lands acquired in 1923 continued to provide the petitioner with a source of coal from early in 1926 down to the time of the hearing.

In determining what rate of depreciation the petitioner was entitled to for 1920 and 1921, we must base our decision on the facts known or reasonably anticipated in those years, and not on what has since transpired. *Colmer-Green Lumber Co.*, 12 B. T. A. 256; *Stouts Mountain Coal Co.*, 4 B. T. A. 1292; *Sterling Coal Co., Ltd.*, 8 B. T. A. 549; and *Kehota Mining Co.*, 28 Fed. (2d) 995, affd. 30 Fed. (2d) 817; certiorari denied, 279 U. S. 864. If it were known or could have been reasonably anticipated in those years that other coal lands were available to the petitioner or would be available to it at or before the time it expected to exhaust the coal in its own lands and would extend the period of operations, a lower rate of depreciation should be allowed than if conditions were otherwise. While the record shows the acquisition of additional land in 1923, or something more than a year after the years here involved, and about three years prior to the exhaustion of the coal in the lands then owned by the petitioner, it is silent as to the availability of such land during the years before us. . In the absence of evidence on this point, and in view of the fact that some of the machinery

with which operations were begun in 1917 is still being used in 1929, we are unable to hold that the respondent's determination is erroneous.

The remaining issue is whether the amount of $32,627.79, representing the reserve set up for bonuses to officers, is deductible, neither the amount nor the book entry setting it up being questioned. There is also no question as to the reasonableness of the compensation involved. The petitioner contends that the resolution authorizing the bonus was passed in good faith; that the amount in question constituted additional compensation to the officers and is properly deductible by it as an operating expense for 1920. The respondent contends that as no person or officer was ever designated to receive any of the bonus or any of it allocated to any one, there was no liability on the part of the corporation to pay the amount or any portion of it, and therefore the amount is not deductible.

Except in the case of insurance companies, reserves are not allowable deductions under the Revenue Act of 1918, which is applicable to the year 1920. *William J. Ostheimer*, 1 B. T. A. 18; *Uvalde Co.*, 1 B. T. A. 932; *Gude Bros. Kieffer Co.*, 2 B. T. A. 1029. Clearly the amount is not allowable on the ground of being a proper reserve. If allowable at all it must be on the ground that it was a business expense incurred during the taxable year.

Here we have five men who constituted all the directors of the petitioner, all of its officers and all of its stockholders, purporting to vote a bonus to themselves in addition to their regular salary. The resolution does not provide the basis on which the bonus was to be allocated to the officers entitled to it. By the terms of the resolution, persons entitled to receive any part of the bonus were to be so designated by the board of directors as should " be deemed fit and proper by them." Although the testimony shows that it was the general understanding among the directors that the bonus was to be apportioned among them on the basis of their annual salaries, no action was ever taken toward apportioning it among them on that or any other basis. While the resolution set aside 20 per cent of the net income, it did not direct the payment of the amount to any one, but simply provided that the persons who were to receive any part of it were to be designated by the board of directors. From our reading of the resolution we think the payment of the bonus as well as the determination of the parties to whom it was to be paid was left entirely in the hands of the board of directors, where it was before the resolution was passed. Further action on the part of the board of directors was necessary before any one of the officers would be entitled to any part of it. Until the board of directors acted, no one of the officers could claim that he was entitled to share in the

 1345

bonus or that he was entitled to any particular amount of it. Where, as is the case here, the payment of a bonus as well as the designation of the parties to share in it and the extent to which they should share in it is left so completely to the future action of the board of directors, we do not think the corporation has incurred any liability for which it is entitled to take a deduction in determining taxable income. In our opinion the resolution is completely lacking in the finality of action required to establish a liability on the part of the petitioner to pay the bonuses. Inasmuch as the petitioner incurred no liability in the taxable year to pay any bonuses, we think the respondent properly refused to allow the deduction.

*Further action will be had under Rule 62(b).*